George Heep, et al., Plaintiffs-Appellants, v. Frank Mason and Elmer Vitalis, d/b/a Vitalis Truck Lines, Defendants-Appellees.

Gen. No. 67–100.

Third District.

October 7, 1968.

Perona & Perona, of Spring Valley, for appellants.

O'Brien, Burnell, Puckett & Barnett, of Aurora, for appellees.

SCHEINEMAN, J.

On October 30, 1964, the plaintiff, George Heep, was driving his car eastward from Ottawa on Interstate

Route 80, with Jane Etheridge, John Giordano and Pat Slingsby as passengers in a car pool. There was possibly some light fog, but visibility was good so they proceeded at 65 to 70 miles per hour. Earlier the fog had been much denser, causing a series of accidents, since they observed cars had gone off the road and there was debris visible.

As they approached the Marseilles exit, they were stopped by police because of a wreck ahead of them, which they were told had occurred during the heavy fog. The wreck was cleared away and after a half hour they were permitted to proceed. Heep started eastward again and observed the defendants' truck pulled out just behind him.

Visibility continued to be normal for a time, then they came into a patch of very dense fog where visibility was practically zero. Heep stopped his car on the pavement and Slingsby got out to direct him off to a parking place. Slingsby then heard the noise of a truck approaching from their rear, he shouted a warning to Heep, but it was too late and the defendants' truck crashed into the rear of the Heep car, knocking it about 30 to 40 feet off to the south, and the three persons in it suffered personal injuries, for which they brought this suit.

A jury found for the defendants, and the plaintiffs appealed, contending the verdict is contrary to the manifest weight of the evidence, that they should have received a directed verdict, and that the court erred in rulings on instructions.

According to the general trend of the various witnesses' testimony, the entry into the heavy fog was quite sudden and they had no previous knowledge or observation of this dense fog. They disagreed somewhat as to how far the Heep car traveled in the heavy fog before it stopped. Heep said a block or so, but admitted he had previously estimated 10 to 20 feet and had so stated in a deposition. He said he had changed his mind after

thinking about the drive in a sheriff's car when he was injured and was taken to a hospital.

Heep said he had been driving 65 to 70 miles per hour until he hit the heavy fog, then he quickly reduced to 30 and that he then stopped. The visibility had been good prior to the sudden change.

The defendant, Mason, declared there was no warning of the fog. It was like having a blanket thrown over the windshield or like running into a wall. He was traveling about 30 miles per hour and estimated he had driven 30 to 40 feet in the dense fog when the collision occurred.

In view of the general agreement on the suddenness of the blotting out of visibility, we see no merit in the argument that the court should have directed a verdict for the plaintiffs. The same opaque condition which caused Heep to stop on the pavement existed also for the defendant, Mason, and this presented a jury question as to the conduct of Mason.

It was clearly a question for the jury whether the sudden change in the weather was to be blamed for the accident. It could not be said as a matter of law that Mason did not maintain a proper lookout, or had his truck under proper control.

It was somewhat hazardous to stop in the dense fog on the pavement, especially on that highway with its known heavy traffic and, of course, Heep knew the defendants' truck was behind him. Heep could not be expected to exercise perfect discretion in the emergency, but the same emergency existed for the defendant, Mason. The plaintiff called as a witness a driver of another car which had encountered the same conditions. This driver testified he pulled off the pavement, drove through the drainage area and up on the other side, stopping only when he could park along the fence line.

Under the conditions facing the defendant, Mason, as well as the plaintiff, Heep, it must be held that the ver-

145

dict was within the scope of the evidence and that a new trial is not justified.

Although we consider the case presented questions of fact for decision by the jury, the appellants have attempted by the citation of numerous cases to make it appear that the case presented a question of law. They cite Hollis v. Mateika, 66 Ill App2d 267, 213 NE2d 409; Little v. Illinois Terminal R. Co., 320 Ill App 163, 50 NE2d 123; Johandes v. Chicago M. & St. P. R. Co., 260 Ill App 328; James v. Motor Transit Management Co., 260 Ill App 246, and Gilman v. Lee, 23 Ill App2d 61, 161 NE2d 586.

We do not consider any of these cases in point. These involved situations where a party had warning of a condition or had the opportunity to see an obstacle, which others did see, or other reasons not present in this case. We cannot ignore, nor hold that the jury ignore, the testimony that visibility had been good, then a heavy blanket of fog descended on the area, without warning. Nor can we ignore the evidence that the collision occurred a very short time after the advent of the fog, and before the vehicles had time to proceed very far in it. The argument for appellants ignores this evidence and assumes a different state of facts.

Referring to the instructions, we note that the court gave IPI instruction No. 12.05 Revised, at the request of the plaintiff, in the following form:

> "If you decide that the defendants were negligent and that their negligence was a proximate cause of injury to the plaintiffs, it is not a defense that something else may also have been a cause of the injury.
>
> "However, if you decide that the sole proximate cause of injury to the plaintiffs was something other than the defendants, then your verdict should be for the defendants."

It is argued that fog is merely a condition and can never be regarded as a proximate cause. There are cases

146

in which this was true of the condition shown in evidence where there was convincing evidence of actual negligence on the part of a driver which was plainly a proximate cause. This is not a rule to be applied in all cases regardless of the facts. Thus, in Berg v. New York Cent. R. Co., 391 Ill 52, 62 NE2d 676, the Supreme Court stated:

> "The undisputed facts lead to the conclusion that the icy condition of the street was the proximate cause of the injury and not defendant's wrongful act."

█ █ Appellants seek to distinguish that case on the ground the "condition" was ice on the pavement, not fog. But in the numerous trials of cases concerning traffic injuries, it is routine to ask the witnesses what the weather conditions were at the time. The witnesses are expected to inform the jury of the condition of the pavement, and of any impairment of visibility such as may be caused by heavy rain, snow or fog. This is because it is common knowledge conditions may impede a driver in operating his vehicle, and, especially where the condition is met suddenly without reasonable warning, a jury may be justified in finding that a driver should not be blamed for something he could not help. Observe that the court instructed the jury if the defendant was negligent and that negligence was a proximate cause of any injuries, it is not a defense that something else may also have been a cause. It is clear the instruction was fair to the plaintiffs, and it was not error to give it.

█ It is further argued that the court erred in refusing to give plaintiffs' instruction, as follows:

> "The fact that motor vehicles other than the plaintiffs and the defendants were involved in accidents on the day of the occurrence is not to be considered by you in determining whether the defendants exercised ordinary care in this accident."

This instruction violates the modern technique of instructing juries, in several ways. In the first place, the Illinois system now in vogue tends to follow the basic policies set out in IPI. It is stated in the foreward to that volume by the chairman of the Supreme Court Committee on Jury Instructions:

"First, the Committee in general has been opposed to negative instructions, that is, instructions which tell the jury not to do something.

"We have been firmly against instructions which single out a particular item of evidence for comment, even when there is judicial authority for the instruction."

It is also obvious that this proposed instruction is not an attempt to state a rule of law, but it is an argument for the plaintiffs along the line of the former practice, now condemned, of having the judge present arguments to the jury. Thus it violates the Supreme Court rule which permits the giving of an instruction not in the book, provided it meets certain criteria, including the requirement that it be "free from argument."

The fact that many other accidents happened in fog that day, is an indication of its density which might otherwise be difficult to describe, so that a jury would understand what the conditions were. The evidence on this subject came in response to questions from both sides, there was no objection to this line of testimony. It would surely be confusing to a jury to hear this evidence without objections, and then hear the judge tell them not to consider it. It could also be argued for the plaintiffs that the indications of other collisions might be a form of warning to the defendant driver that he might encounter dangerous conditions. The refusal of this instruction was proper.

The verdict was within the scope of the evidence, there was no error in the instructions and the judgment is affirmed.

Judgment affirmed.

STOUDER and ALLOY, JJ., concur.